IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KYSHIM HENDERSON**<br>       **Petitioner,**<br><br>      v.<br><br>**SUPERINTENDENT SCI SOMERSET,** *et al.*,<br><br>       **Respondents.** | **CIVIL ACTION NO. 21-1716** |

**ORDER**

Petitioner Kyshim Henderson, through counsel, objects to the Report and Recommendation ("R&R") of Magistrate Judge Pamela A. Carlos recommending that the Court deny the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. After *de novo* review, Court will overrule the objections and approve and adopt the R&R.

The Court summarizes the state-court proceedings as needed for context. In 2010, Petitioner was convicted after a bench trial of third-degree murder and possessing an instrument of crime in the shooting death of Rashawn Howard. Lyle Littlejohn and Germane Thompson had signed statements implicating Petitioner after police questioning, but when they testified at trial, they recanted these statements. A third witness, Sheryl Smith, testified that she saw Petitioner run away with a gun immediately after the shooting. Two of the investigating officers who took statements from Littlejohn and Thompson also testified. Investigating detective George Pirrone did not testify.

In his first proceeding under the Pennsylvania Post-Conviction Relief Act ("PCRA"), Petitioner argued that his trial counsel was ineffective for failing to call two witnesses, Carl Bell and Antwain Young. In affidavits, Bell attested that he saw an unknown man leave the area of the crime scene, and that he resisted police attempts to convince him to identify Petitioner as the

shooter. Young's affidavit stated that he was at home when the shooting occurred, which Petitioner argued undercut witness testimony that Young was at the scene as well as Henderson.

The PCRA court rejected the claims, and the Superior Court affirmed, holding that Bell's statement, which Petitioner's counsel had introduced at trial during cross examination, established no more than an unknown person was at the scene and that Young's affidavit only provided Young with an uncorroborated alibi.[1]

In his second PCRA petition, Petitioner presented new evidence in the form of testimony by Marcus Williams, who admitted to shooting Howard in self-defense. In detailed findings, the PCRA court determined that Williams's testimony was incredible.[2] The Superior Court affirmed on March 20, 2020.[3]

Petitioner filed the Petition in this Court on July 11, 2021. The R&R correctly concluded that the Petition is untimely under the applicable statute of limitations.[4] Petitioner argues that statute of limitations does not apply because the Petition presents new evidence of actual innocence combined with evidence of constitutional violations by the police.[5]

Petitioner argues that the Pennsylvania courts failed to consider the totality of the evidence; in other words, that the courts should have considered the evidence of Bell and Young

---

[1] *Commonwealth v. Henderson*, No. 462 EDA 2014, 2015 WL 7078329, at *4 (Pa. Super. Ct. Nov. 12, 2015). The R&R correctly concluded that at most, Young's affidavit would constitute only impeachment evidence of Smith, which is not sufficient to show actual innocence. R&R at 9 (citing *Munchinski v. Wilson*, 694 F.3d 308, 335 (3d Cir. 2012)) [Doc. No. 26].

[2] Op., Ex. A, at 33-37, *Commonwealth v. Henderson*, No. CP-51-CR-0007718-2009 (Pa. Ct. Com. Pl. May 15, 2019).

[3] *Commonwealth v. Henderson*, No. 1284 EDA 2019, 2020 WL 1138027 (Pa. Super. Ct. Mar. 9, 2020).

[4] R&R at 7-8. As explained in the R&R, the petition was more than a year late, as the clock was running on the statute of limitations during periods when the PCRA petitions were not pending. *See* 28 U.S.C. § 2244(d)(1).

[5] *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (holding that "a convincing showing of actual innocence" could allow a petitioner to avoid the statute of limitations).

along with the evidence of Williams. In evaluating a claim of actual innocence, a court must "consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."[6] As the PCRA court in the second proceeding found Williams's testimony incredible – a determination that Petitioner fails to demonstrate by clear and convincing evidence was incorrect – the Court cannot conclude that combining the rejected evidence of Williams with the previously rejected evidence of Bell and Young somehow shows that Petitioner is actually innocent.

Petitioner also argues that there is new evidence of misconduct by Pirrone, a detective who was present with other officers when Littlejohn and Thompson gave their statements, and also argues more broadly that Philadelphia homicide detectives use force and coercion on witnesses to make them identify suspects.[7] Much of this information was available to the state courts, and the R&R concluded that Petitioner "failed to demonstrate how accusations of misconduct in unrelated matters extend now to his case, or more significantly, how one officer's prior misconduct undercuts the testimony of two officers who otherwise have no cited examples of wrongdoing."[8] The R&R also highlighted the fact that the evidence of alleged misconduct does not establish Petitioner's actual innocence.[9]

Petitioner objects to the R&R, arguing that it concluded that "testimony by police is more reliable than the testimony of the witnesses who claimed they could not read or write and denied

---

[6] *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citation omitted).

[7] *See* R&R at 14.

[8] R&R at 15.

[9] *Id.*

making the statements implicating Petitioner."[10] There is no basis for this objection, which misconstrues the R&R.

The Court has reviewed the transcripts of Petitioner's trial. Littlejohn testified that the officers showed him a set of pictures with one of them circled, and said that if he did not sign it, they would "try to hold me or lock me up."[11] He also testified that he told the officers "I didn't know who did it. I didn't see nothing" but that the officers wrote a statement identifying Petitioner that Littlejohn could not read.[12] Detective Joseph Centano testified that Littlejohn circled the photograph of Petitioner, that Centano read Littlejohn the statement inculpating Petitioner, and that the police did not suggest any of the information in the statement.[13]

Thompson testified that he did not remember telling officers most of the information in his statement, and denied that he could read.[14] Thompson also denied circling a photo in the array or signing it.[15] Thompson denied hearing any gunshots, and admitted that he lied at the preliminary hearing when he testified that he had heard shots.[16] Detective Dominck Mangoni testified that Thompson reviewed the statement and that Mangoni had Thompson read part of it

---

[10] Pet'r's Objs. R&R at 2 [Doc. No. 27].

[11] Notes of Testimony ("N.T.") at 87-88, *Commonwealth v. Henderson*, No. CP-51-CR-0007718-2009 (Mar. 29, 2010).

[12] *Id.* at 91, 96.

[13] *Id.* at 145-47.

[14] *Id.* at 178-92. The trial court noted on the record of Thompson that "he can read, by the way. He's been reading along the whole time." *Id.* at 188-89.

[15] *Id.* at 193-94.

[16] N.T. at 9-12, *Commonwealth v. Henderson*, No. CP-51-CR-0007718-2009 (Mar. 30, 2010).

aloud to ensure that he could read.[17] Mangoni also testified that Thompson selected Petitioner in the photo array of his own accord.[18]

Smith testified that she saw Petitioner (whom she identified as "Mike") and Young (whom she identified as "Butter") running away from the scene.[19] She also confirmed that in her statement to police she said that Petitioner had a gun and, although Smith did not recall certain details at trial, she testified that the police had not told her what to say in her statement.[20]

In convicting Petitioner of third degree murder, the trial court held that "[i]t was quite clear that [Littlejohn and Thompson] were not telling the truth when they were on the stand, however, were telling the truth when they gave the statements to the detectives."[21] "Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence."[22] Although Petitioner disagrees with the factual determinations by the state courts, both at trial and in the PCRA proceedings, Petitioner has not shown that the credibility determinations of the trial and PCRA courts are undermined by misconduct charges against an officer who did not testify at the trial, or offered other clear and convincing evidence that would justify overturning numerous factual determinations. Most significantly, Petitioner has not met his burden to "(1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely

---

[17] *Id.* at 68.

[18] *Id*. at 70.

[19] *Id.* at 42-44.

[20] *Id.* at 43-47.

[21] *Id.* at 82-83.

[22] *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000).

than not that no reasonable [factfinder] would have convicted him . . . in light of the new evidence," and thus cannot evade the statute of limitations that bars his Petition.[23]

**AND NOW,** this 27th day of September 2024, upon consideration of the Report and Recommendation ("R&R") of the Honorable Pamela A. Carlos, and the counseled objections thereto, and after *de novo* review, it is hereby **ORDERED** that:

1. The Objections are **OVERRULED** and the R&R [Doc. No. 26] is **APPROVED and ADOPTED**; and

2. The Petition will be dismissed by separate order.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe

**CYNTHIA M. RUFE, J.**

---

[23] *Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021).